## Sutton v. Tuggle.

## Tuggle v. Sutton.

(Decided June 21, 1935.)

LOW & BRYANT and ADRIAN WEINSTEIN for Sutton.

B. B. GOLDEN for Mrs. Tuggle.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming in part and reversing in part.

### First Case.

On April 16, 1930, Allie Tuggle recovered a judgment against J. E. Sutton for $4,500, from which he appealed on April 7, 1932.

### Second Case.

On October 1, 1932, in a new action, J. E. Sutton was awarded a new trial of the above action, and from that judgment Mrs. Tuggle appealed on December 29, 1933.

### Consolidation.

Sutton's motion in this court to consolidate these two appeals has been sustained, they have been consolidated, have been heard together, and we shall dispose of them in one opinion.

## The Facts.

On January 12, 1929 (according to the record, 1930 according to brief for Mrs. Tuggle), in Bell county, Ky., Mrs. Tuggle was struck by an automobile owned and driven by Sutton. He carried her to the home of her son-in-law, Henry Jackson. There is evidence Mrs. Tuggle, in an effort to avoid being run down by another machine, ran against the side of Sutton's machine and thus sustained her injuries. Mrs. Tuggle, it seems, has never testified. Mr. Sutton testifies that she stated to him that he was not to blame at all. There is no evidence she sustained any injury other than these nine words in the testimony of her son-in-law, Jackson, "She was hurt pretty seriously, laid up several months." In February, 1930, Jackson learned Sutton was protected by liability insurance. On March 10, 1930, Mrs. Tuggle filed in the Bell circuit court a suit against Sutton wherein she asked a judgment against him for $10,000 on account of her alleged injuries. Sutton is a resident of Corbin in Whitley county, and was then employed by the Louisville & Nashville Railroad Company as a fireman and his customary run was on a passenger train that ran regularly from Corbin through Pineville in Bell county to Loyal in Harlan county and back again. Mr. Jackson had interviewed Sutton after this injury and had arranged with Sutton to get off the train in Pineville on the afternoon of March 12th in order that a paper might be served on him. Sutton testifies Jackson told him no suit had been filed against him, but that a suit had been filed against Sutton's insurance carrier and that the paper to be served on Sutton was a summons for his attendance as a witness. Unexpectedly the Louisville & Nashville Railroad Company sent Sutton elsewhere on that day and he did not pass through Pineville on the afternoon of March 12th as expected. Mr. Jackson testifies it may have been at his instance that Mrs. Tuggle procured a warrant for Sutton. Anyway on the next day, March 13, 1930, Mrs. Tuggle procured a warrant for Sutton's arrest upon the charge of assault and battery. Sutton was arrested that afternoon under this assault and battery warrant in Corbin, Whitley county, Ky., where he lived, by John L. Manning, a policeman of that city, who turned him over to Henry Jackson and Phil Gambrel, the latter being a Bell county deputy sheriff. Sutton offered then and there to give bail for his appearance, but was not al-

lowed to do so and was told by Gambrel, so Gambrel swears, that "the justice of the peace had not indorsed any bond on the warrant and he would have to go to Bell County to make bond." An assault and battery is a misdemeanor and by provision of section 28 of the Criminal Code of Practice a warrant of arrest for a misdemeanor must have indorsed upon it the bail required and authority to the arresting officer to take the bail. This warrant was later introduced and a copy of it is in the record and it bears an indorsement fixing the bail to be taken at $300; nevertheless Gambrel told Sutton no bail was indorsed and that Sutton could not give bond there, but would have to go to Pineville in Bell county to do so. The reason for Gambrel's telling Sutton that will appear later. Sutton in his ignorance went with Jackson and Gambrel to Bell county and went to the office of the justice of the peace who had issued the warrant. The county attorney was sent for, Sutton waived trial then, and it was arranged, so Sutton says, that the matter should be submitted to the grand jury, and that he then gave bond to answer any charge that body might return against him.

While this was going on, some one (perhaps Gambrel) handed Sutton a paper with the remark, "Here is your copy of the papers," or, "Here is a summons for you." Sutton, supposing this to be some paper in connection with the assault and battery matter, so he says, thrust it in his pocket without reading it. The surety on Sutton's bond, who had gone with him from Corbin to Pineville, supports him, but Jackson testifies Sutton read the paper which was a summons to appear and answer the $10,000 damage suit filed against him by Mrs. Tuggle.

The grand jury did not indict Sutton, and he had almost forgotten the matter when on May 23, 1930, an execution in favor of Mrs. Tuggle for $4,500 was levied on Sutton's automobile and on his house in Corbin. It appears that in the meantime Mrs. Tuggle had, by simply reading to the jury her petition and without introducing any evidence, obtained this $4,500 judgment against him in her $10,000 suit.

The levy of this execution awakened Sutton and he got busy. He appealed from the $4,500 judgment and he filed suit under section 518 of the Civil Code of

Practice for a new trial of that case which the trial court awarded him.

## Conclusion.

We do not have to decide whether Sutton read this summons or not. Suppose we admit he did read it a half dozen times, still the stubborn fact remains that Sutton had not come to Bell county of his own free will, but had been caused to go there by a deception practiced upon him by Gambrel and by Jackson, the latter being shown by his testimony to be acting for Mrs. Tuggle and to have actively represented her in the matter. A service so obtained is invalid. See Wood v. Wood, 78 Ky. 624; Volz v. Tutt, 12 Ky. Law Rep. 506; 21 R. C. L., p. 1275, sec. 17; and 50 C. J., p. 488, sec. 92; where it appears the rule is a general one, and from the authorities there cited the rule applies where the deception is practiced by the plaintiff's agent or attorney and the plaintiff had no actual knowledge of it. In Cummins' Adm'r v. Scherer, 231 Ky. 518, 21 S. W. (2d) 836, 837, we said:

> "All courts hold that, where the attendance of the defendant is procured by an arrest caused for the sole purpose of securing jurisdiction so he may be served with civil process, the service of the process will be set aside."

The prosecution of Sutton on the criminal charge has never been pressed and it is evident that it was begun for the sole purpose of bringing Sutton to Bell county, which Mrs. Tuggle's son-in-law, Jackson, planned and carried out for the purpose of having Sutton served with process in the $10,000 damage suit while in Bell county, which Jackson apparently thought was necessary to give the Bell circuit court jurisdiction. Many other matters are discussed in briefs, but it is needless to go into them. The chancellor did not err in the second case in awarding a new trial of the first one.

We regard this, which is copied from Cooley on Torts, p. 190, as quite apposite here:

> "One way in which process is sometimes abused, is by making use of it to accomplish not the ostensible purpose for which it is taken out, but some other purpose for which it is an illegitimate and unlawful means. * * * It is the duty of the court, where the service of the writ is brought

about by deception through abuse or other process, or by any unlawful act, to take care that no benefit be derived from it. The effectual mode to accomplish this will be to set aside the service as unauthorized. It has, therefore, been very justly said that the courts will not tolerate service of process on any person who, for that purpose, has been deceitfully brought within their jurisdiction. * * * The principle is, that no one shall derive advantage from abuse of the process of the courts."

Four serious attacks are made upon the $4,500 judgment, some of which we would have to sustain, but in view of the conclusion we have reached in the second case by which the first case is affected there is no need to discuss them.

Judgment in the first case is reversed. Judgment in the second case is affirmed.